UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
NELI INTERNATIONAL INCORPORATED

                                    Plaintiff,                Case No.:

       -against-

PREMIER RESTAURANT GROUP, LLC,               **COMPLAINT**
FOREVER BRANDS OPERATING COMPANY, LLC,
CHEEBURGER OPERATING COMPANY, LLC,
CHEEBURGER VA, LLC and ANTHONY WEDO,

                                   Defendants.
-------------------------------------------------------------------x

        Plaintiff NELI International Incorporated ("NELI" or "Plaintiff") for its complaint

against defendants Premier Restaurant Group, LLC ("Premier"), Forever Brands Operating

Company, LLC ("Forever Brands"), Cheeburger Operating Company, LLC ("Cheeburger"),

Cheeburger VA, LLC ("Cheeburger VA"), and Anthony Wedo ("Wedo"), alleges as follows:

**Introduction**

        1.      Plaintiff entered into written agreements whereby it extended a $5 million senior

secured term loan to Premier.  The purpose of the loan was to finance fast-food restaurant

franchise businesses owned and operated by Premier and its subsidiary limited liability

companies (LLCs) named as defendants, all of which are controlled and operated by the

individual defendant, Wedo.  Each LLC defendant other than Premier gave Plaintiff written

guaranties of Premier's obligations under the loan agreement; they and Premier also granted

Plaintiff security interests in all of their assets; and Wedo provided limited guaranties and other

promises to NELI.

        2.      Premier has breached and defaulted under the loan agreement by, among other

things, failing to pay a principal loan balance of more than $4.0 million that became due on

August 1, 2022, which has since grown to more than $4.5 million (plus ongoing interest and attorneys' fees). Each guarantor has breached and defaulted under his or its guaranty by, among other things, failing to pay the amounts due.

3.    Plaintiff sues to enforce its rights under the loan agreement, guaranties and related loan documents and seeks as remedies, without limitation, (a) the appointment of a receiver with the power, among others, to take over management of the defendant LLCs including their franchise businesses and to sell defendants' businesses and assets free and clear of liens, claims, assets and encumbrances so as to maximize the value of such assets for the benefit of Plaintiff and any other creditors, (b) enforcement of Plaintiff's security interest in the defendant LLCs' assets that secured the loans, including a foreclosure or receiver sale of such assets, (c) money damages for any and all amounts due under the loan and guaranties following such sales or foreclosure, and (d) all interest, fees and costs that Plaintiff is entitled to recover under the loan and guaranties.

**The Parties**

4.    Plaintiff, NELI, is a Canadian corporation incorporated and with a principal place of business in Ontario, Canada.

5.    NELI is in the business of providing loans and other forms of financing to other businesses.

6.    Each of the LLC defendants – Premier, Forever Brands, Cheeburger, and Cheeburger VA – is a Delaware limited liability company.

7.    The individual defendant, Wedo, resides in and is a citizen of the State of Delaware.

8.      Wedo owns 95.5% of Premier.  His son, Austin Wedo, owns the other 0.5% of Premier.  They are the two members of Premier.

9.      Premier is in the business of franchising and acquiring branded fast-food restaurant chains.  It owns the brands Forever Yogurt (through its ownership of defendant Forever Brands) and Cheeburger-Cheeburger (through its ownership of defendants Cheeburger and Cheeburger VA).

10.     Premier is the sole member of each of Forever Brands, Cheeburger, and Cheeburger VA.  No member of any of the defendant LLCs is a citizen of Canada or any other foreign country.

**Jurisdiction and Venue**

11.     This Court has subject-matter jurisdiction over this action based on diversity of citizenship, under 28 U.S.C. § 1332(a)(2), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state, in that:

        (a)     Plaintiff is a citizen of Canada, a foreign state; and

        (b)     Each defendant is a citizen of Delaware and/or New Jersey, and no defendant is a citizen of any foreign country, as alleged in paragraphs 4 through 10 above.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because there is no district in which an action may otherwise be brought as provided in § 1391; each defendant is subject to the Court's personal jurisdiction with respect to this action; and each defendant agreed in writing as follows (in their respective agreements described below and copies of which are attached hereto):

"For purposes of litigating any dispute that arises under this [Agreement or Guaranty and Pledge Agreement], the parties hereby submit to and consent to the jurisdiction of the State of New York, and agree that such litigation will be conducted in the courts of New York County, New York, or the federal courts for the United States for the Southern District of New York, and no other courts."

## Factual Allegations

**The Loan Documents**

13.     NELI (as lender) and Premier (as borrower) entered into a loan agreement dated July 4, 2017, whereby NELI provided Premier with a $5 million senior secured term loan. That agreement was amended by Amendment #1 dated as of December 1, 2017, Amendment #2 dated as January 1, 2018, Amendment #3 dated as of July 1, 2018, and Amendment #4 dated as of September 6, 2018 (collectively, the "Loan Agreement"). A copy of the Loan Agreement (including its amendments) is attached as **Exhibit A**.

14.     Each of Forever Brands, Cheeburger, and Cheeburger VA (as guarantor and grantor) entered into a Guaranty and Security Agreement, to which Premier (as borrower and grantor) and NELI (as lender) also were parties, as follows:

(a)     A Guaranty and Security Agreement by Forever Brands, dated July 5, 2017 (the "Forever Brands Guaranty"), a copy of which attached as **Exhibit B**.

(b)     A Guaranty and Security Agreement by Cheeburger, dated April 1, 2020 (the "Cheeburger Guaranty"), a copy of which is attached as **Exhibit C**.

(c)     A Guaranty and Security Agreement by Cheeburger VA, dated April 1, 2020 (the "Cheeburger VA Guaranty"), a copy of which is attached as **Exhibit D**.

15.     By and as stated in these Guaranty and Security Agreements, each of Forever Brands, Cheeburger, and Cheeburger VA, among other things: (a) absolutely and unconditionally guaranteed the payment and performance of Premier's obligations under the

Loan Agreement; and (b) granted to NELI a security interest in its assets including, without limitation, all equipment, inventory, accounts, intangibles, documents of title, chattel paper, instruments, investment property, money, securities, documents, and proceeds, as more particularly described in each such Guaranty and Security Agreement (the "Collateral").

16.     Premier, as a grantor under these Guaranty and Security Agreements, also granted to NELI a security interest in all of its property as described in the preceding paragraph, which property is also part of the Collateral.

17.     Each Guaranty and Security Agreement includes, as one of the remedies available to NELI following an Event of Default, the appointment of a receiver with the powers, among others, to take possession of all assets of Premier and each Guarantor, carry on the business of Premier and each guarantor, and sell any or all of those assets.  Sections 12, 13, and 3 of Exhibits B, C, and D.

18.     Wedo as pledgor and guarantor and NELI as secured party entered into a Limited Guaranty and Pledge Agreement dated August 6, 2018 (the "Wedo Guaranty and Pledge"), a copy of which is attached as **Exhibit E**.

19.     By and as stated in the Wedo Guaranty and Pledge, Wedo, among other things: (a) guaranteed to NELI the obligations and indebtedness of Premier under the Loan Agreement with recourse to Wedo limited to his interest in Premier; (b) pledged and granted to NELI a security interest in Wedo's interest in Premier; and (c) assigned to NELI all of Wedo's interest in any amounts then or thereafter owing by Premier to Wedo and any property of Wedo then or thereafter coming into NELI's possession or under its control.

20.     On February 13, 2019, the parties identified below entered into the following agreements:

(a)      Premier (as payor) signed and delivered to Wedo (as payee) a Demand Promissory Note, dated January 31, 2019, in the principal amount of $400,000 ("Premier to Wedo Note"); and

(b)      Premier (as borrower), NELI (as lender), and Wedo (as principal) entered into an Assignment and Postponement ("Assignment and Postponement"). Copies of the Assignment and Postponement, and of the Premier to Wedo Note that is an exhibit to the Assignment and Postponement, are attached as **Exhibit F**.

21.      By the Assignment and Postponement, Wedo agreed, among other things, that until all obligations of Premier under the Loan Agreement have been paid and satisfied in full, Premier was to make no payments to Wedo under the Premier to Wedo Note, and if Wedo received any such payments, Wedo was to pay over such amounts to NELI.

22.      Premier, Forever Brands, Cheeburger, Cheeburger VA and Wedo are hereinafter referred to collectively as "Obligors."

23.      On June 25, 2020, NELI (as lender) and the Obligors entered into a Loan Renewal Agreement dated as of April 1, 2020 ("Loan Renewal Agreement"), a copy of which is attached as **Exhibit G**.

24.      The Loan Renewal Agreement, among other things, extended the date by which the Obligors were required to pay to NELI the amounts then due under the Loan Agreement until on or before September 30, 2020.

25.      On June 25, 2020, Wedo executed and delivered to NELI a Validity Guarantee dated April 1, 2020 ("Validity Guarantee"), a copy of which is attached as **Exhibit H**.

26.      By the Validity Guaranty, Wedo guaranteed to NELI the payment and performance by Premier and the other Obligors of obligations arising from certain events stated

therein, including: (a) Premier or the other Obligors making any distributions or advancing any funds to any of their officers, employees or members without NELI's prior written consent, and (b) Premier or the other Obligors paying Wedo compensation in excess of his employment agreement in effect at that time.

27.     On March 14, 2022, NELI (as lender) and the Obligors entered into a Loan Extension Agreement dated as of December 22, 2021 ("Loan Extension Agreement"), a copy of which is attached as **Exhibit I**. The Loan Extension Agreement, among other things:

(a)     extended the date by which the Obligors were required to pay to NELI the full amounts due under the Loan Agreement until on or before July 31, 2022;

(b)     stated that the amount due under the Loan Agreement as of October 31, 2021 was $4,099,250 (errors & omissions excepted); and

(c)     stated that, if NELI received from the Obligors 50% of the amount outstanding under the Loan Agreement at the time of payment, so long as that payment was made on or before the extended payment date of July 31, 2022, then NELI would accept such payment in full satisfaction of all obligations under the Loan Agreement; but, after the expiration date of July 31, 2022, only payment of the full amounts due under the Loan Agreement would discharge the loan.

28.     In a "Side Letter" from NELI to Wedo also dated March 14, 2022, NELI further agreed that it would accept payment of $1.8 million, in addition to monthly interest of $8,333.33, in full satisfaction of all obligations under the Loan Agreement, provided NELI received such payments on or before July 31, 2022. A copy of the Side Letter is attached as **Exhibit J**.

29.     NELI's security interests in the Collateral were perfected by the filing with the Delaware Department of State of UCC Financing Statements, amendments continuing such

statements, and a statement terminating such a UCC Financing Statement that had been filed by another creditor. Copies of these UCC filings are attached collectively as **Exhibit K**.

30.     As a result of the transactions described above, NELI owns, holds and possesses the Loan Agreement, the Wedo Note, the Forever Brands Guaranty, the Cheeburger Guaranty, the Cheeburger VA Guaranty, the Wedo Guaranty and Pledge, the Assignment and Postponement, the Validity Guarantee, the Loan Renewal Agreement, the Loan Extension Agreement, the UCC filings, and other documents relating to the Loan Agreement (collectively, the "Loan Documents").

**Obligors' Defaults, Amounts Owed**

31.     Obligors failed to make any part of the payments, by July 31, 2022, that NELI had agreed to accept in full satisfaction of the amounts due under the Loan Agreement – either 50% of the amount outstanding under the Loan Agreement at the time of payment (as provided in the Loan Extension Agreement) or $1.8 million (as provided in the Side Letter).

32.     Accordingly, after July 31, 2022, Obligors remained liable under the Loan Documents for the full amounts outstanding under the Loan Agreement.

33.     Since July 31, 2022, Obligors have not paid any part of the amounts due under the Loan Agreement. The failure to make such payments constitutes an Event of Default as defined in the Loan Agreement and other Loan Documents.

34.     On January 4, 2023, NELI (by its counsel) sent a letter to the Obligors (the "Demand Letter") notifying them that they were in default under the Loan Documents, accelerating all amounts due under the Loan Documents, and demanding payment by January 16, 2023 of $4,541,633, the amount due as of December 31, 2022 (exclusive of attorneys' fees, costs, and additional interest, if any). A copy of the Demand Letter is attached as **Exhibit L**.

35.     The Demand Letter also demanded that, pending NELI's exercise of its rights and remedies under the Loan Documents, Premier, its affiliates and their respective officers and directors cease to permit distributions to insider shareholders, refrain from paying any sums to creditors with subordinate claims to NELI other than payments to vendors and other counter-parties necessary to operate the business, and take all steps necessary to preserve and protect NELI's collateral.  Exhibit L at 5.

36.     The Demand Letter further demanded that Premier, its affiliates and their respective officers and directors, in furtherance of their fiduciary duties, take steps to maximize the value of the Collateral for the benefit of the stakeholders in order of their creditor priority, including NELI as the holder of the senior secured loan.

37.     To date, Obligors remain in default under the Loan Documents and have not paid NELI the amounts due thereunder.

**The Deterioration of the Obligors' Business, Assets, and
Ability to Pay Amounts Due Under the Loan Documents**

38.     According to its federal tax returns, financial statements and other reports, Premier and its brands have performed poorly in the past few years, having lost units, revenue and market share.

39.     According to Premier's tax returns for the years 2021, 2020, and 2019, which are the three most recent returns available, and Premier's unaudited financial statements for 2022, Premier suffered significant business losses in the past four years, and its revenue has significantly decreased, as follows:

|  | 2022 (unaudited) | 2021 | 2020 | 2019 |
|---|---|---|---|---|
| Total income | $552,349 | $494,699 | $470,420 | $1,164,427 |
| Expenses and other deductions | $680,991 | $549,618 | $605,096 | $1,602,382 |
| Ordinary business loss | ($128,642) | ($99,919) | ($134,674) | ($437,955) |

40.     The reduction in income shown above was due largely to a reduction of nearly 65% of the number of franchise units operated by Premier, directly or through the other defendant LLCs.

41.     The same tax returns for 2019, 2020, and 2021 and the unaudited financials for 2022 show that Premier owed the following amounts, at the end of each such year, payable in less than one year:

|  | 2022 (unaudited) | 2021 | 2020 | 2019 |
|---|---|---|---|---|
| Debts payable in less than one year (does not include additional debt payable in more than one year) | $4,174,134 | $4,188,364 | $4,195,322 | $3,379,482 |

42.     As alleged above (in paragraph 34), Premier actually owed NELI more than $4.5 million as of December 31, 2022 (exclusive of attorneys' fees, costs, and additional interest, if any).

43.     The data above from Premier's own tax returns and financial statements show that Premier has not been able, and will not be able in the foreseeable future, to pay the amounts it owes to NELI under the Loan Documents, and that its assets, which serve as collateral for that

debt, have deteriorated and continue to deteriorate, thereby impairing NELI's ability to collect the amounts defendants owe to it.

44.    The Obligors' inability to pay the amounts due under the Loan Agreement is further shown by the fact that they were unable to raise or pay, by on or before July 31, 2022, either 50% of the more than $4 million then due, or even $1.8 million, either of which NELI agreed to accept in full satisfaction of the Loan Agreement if it had received such payments on or before July 31, 2022.

45.    During the approximately 10-week period from January 1 to March 10, 2023, Premier transferred about $45,000 from its bank account to an account controlled by Wedo and to other unknown accounts.  Those transfers represent about 85 percent of Premier's revenue during that period.

46.    Premier made these transfers:  (a) in disregard of the demand, in the Demand Letter dated January 4, 2023, that Premier cease distributions to insiders and refrain from paying any sums to creditors with subordinate claims to NELI other than payments to vendors and other counter-parties necessary to operate the business (Exhibit L at 5); and (b) in breach of Wedo's obligations under the Wedo Guaranty and Pledge, the Assignment and Postponement, and the Validity Guaranty.

47.    NELI recently learned, from defendants' counsel, that Wedo, the founder, chairman and chief executive of Premier, has been dealing with health issues, as a result of which he is incapable of managing Premier or its business interests.

48.    A recent evaluation  of Premier's business, performed by a consulting firm specializing in franchise businesses and commissioned by NELI, concluded that Premier

historically has performed very poorly as an operator of a franchise company, and that it has lost

significant percentages of its units, revenue and market share for several years.

49.     The evaluation  further found that the business requires additional investment.

50.     Defendants have demonstrated by their actions that they are unable to make such

additional investments.

51.     The franchise consultant concluded that the Collateral is far from sufficient to

satisfy the amounts due under the Loan Agreement.

### Claim One – Breach of the Loan Agreement
(Against Premier)

52.     NELI realleges and incorporates herein paragraphs 1 through 51 above.

53.     Premier has breached and defaulted on its obligations under the Loan Agreement

(Exhibit A), the Loan Extension Agreement (Exhibit I), and the other Loan Documents, to pay

NELI $4,541,633, the amount due as of December 31, 2022, plus applicable interest, attorneys'

fees, and costs.

54.     NELI demanded such payments from Premier (Exhibit L), but Premier has failed

to make such payments and continues to fail to do so.

55.     Such breach by Premier has required NELI to engage attorneys to advise it and

prosecute this action.  Under the Loan Agreement and the other Loan Documents, Premier is

liable to NELI for such attorneys' fees and costs.

56.     NELI has suffered damages as a result of Premier's breach, consisting of all sums

due by Premier to NELI under the Loan Agreement and the other Loan Documents, including

applicable interest, attorneys' fees, and costs.

**Claim Two – Breach of the Forever Brands Guaranty**
(Against Forever Brands)

57.    NELI realleges and incorporates herein paragraphs 1 through 56 above.

58.    Forever Brands has breached and defaulted on its obligations as guarantor, under the Forever Brands Guaranty (Exhibit B) and the other Loan Documents, to pay NELI all amounts that Premier owes to NELI under the Loan Agreement and the other Loan Documents.

59.    NELI demanded such payments from Forever Brands (Exhibit L), but Forever Brands has failed to make such payments.

60.    NELI has suffered damages as a result of Forever Brands' breach, consisting of all sums due by Premier to NELI under the Loan Agreement and the other Loan Documents, as alleged in Claim One above.

**Claim Three – Breach of the Cheeburger Guaranty**
(Against Cheeburger)

61.    NELI realleges and incorporates herein paragraphs 1 through 60 above.

62.    Cheeburger has breached and defaulted on its obligations as guarantor, under the Cheeburger Guaranty (Exhibit C) and the other Loan Documents, to pay NELI all amounts that Premier owes to NELI under the Loan Agreement and the other Loan Documents.

63.    NELI demanded such payments from Cheeburger (Exhibit L), but Cheeburger has failed to make such payments.

64.    NELI has suffered damages as a result of Cheeburger's breach, consisting of all sums due by Premier to NELI under the Loan Agreement and the other Loan Documents, as alleged in Claim One above.

**Claim Four – Breach of the Cheeburger VA Guaranty**
(Against Cheeburger VA)

65.    NELI realleges and incorporates herein paragraphs 1 through 64 above.

66.    Cheeburger VA has breached and defaulted on its obligations as guarantor, under the Cheeburger VA Guaranty (Exhibit D) and the other Loan Documents, to pay NELI all amounts that Premier owes to NELI under the Loan Agreement and the other Loan Documents.

67.    NELI demanded such payments from Cheeburger VA (Exhibit L), but Cheeburger VA has failed to make such payments.

68.    NELI has suffered damages as a result of Cheeburger VA's breach, consisting of all sums due by Premier to NELI under the Loan Agreement and the other Loan Documents, as alleged in Claim One above.

**Claim Five – Breach of the Wedo Guaranty and Pledge**
(Against Wedo)

69.    NELI realleges and incorporates herein paragraphs 1 through 68 above.

70.    Wedo has breached and defaulted on his obligations under the Wedo Guaranty and Pledge (Exhibit E) by causing Premier to make payments, in amounts of about $45,000 at least, to Wedo or individuals or entities he controls or designated, even though Premier has failed to pay NELI all amounts due by Premier to NELI under the Loan Agreement and the other Loan Documents.

71.    NELI has suffered damages as a result of Wedo's breach, consisting of all such sums that Premier paid to Wedo, or individuals or entities he controls or designated, on or after the date of the Wedo Guaranty and Pledge.

**Claim Six  – Breach of the Assignment and Postponement**
(Against Wedo)

72.    NELI realleges and incorporates herein paragraphs 1 through 71 above.

73.    Wedo has breached and defaulted on his obligations under the Assignment and Postponement (Exhibit G) by causing Premier to make payments, in amounts of about $45,000 at least, to Wedo or individuals or entities he controls or designated, even though Premier has failed to pay NELI all amounts due by Premier to NELI under the Loan Agreement.

74.    NELI has suffered damages as a result of Wedo's breach, consisting of all such sums that Premier paid to Wedo, or individuals or entities he controls or designated, on or after the date of the Assignment and Postponement, together with applicable interest.

**Claim Seven  – Breach of the Validity Guaranty**
(Against Wedo)

75.    NELI realleges and incorporates herein paragraphs 1 through 74 above.

76.    Wedo has breached and defaulted on his obligations under the Validity Guaranty (Exhibit H) by causing Premier or any of the other Obligors to make payments, in amounts of about $45,000 at least, to Wedo or other officers, employees or members without NELI's prior written consent and in excess of the amounts payable to him under his compensation agreement.

77.    NELI has suffered damages as a result of such breaches.

**Claim Eight  – Foreclosure of Security Interest on Personal Property**
(Against Premier, Forever Brands, Cheeburger, and Cheeburger VA)

78.    NELI realleges and incorporates herein paragraphs 1 through 77 above.

79.    By each Guaranty and Security Agreement, both the guarantor and Premier, as grantors, granted NELI a security interest in all present and after-acquired property of the grantors ("Collateral").  Sections 2 in each of Exhibits B, C, and D.

80.     The Collateral includes, among other things, all of the grantors' equipment, inventory, accounts, intangibles, documents of title, securities and other investment paper, and money.  Sections 3 in each of Exhibits B, C, and D.

81.     The Collateral is now owned by Obligors, which hold possession thereof.

82.     Due to the defaults under the Loan Documents, as alleged above, NELI is entitled to foreclose on its security interest in the Collateral.

83.     Each Guaranty and Security Agreement provides that, following an Event of Default, NELI may exercise the following remedies, among others:

(a)     entry of any premises where Collateral may be located;

(b)     possession of Collateral by any method permitted by law;

(c)     the sale or lease of Collateral;

(d)     the collection of any rents, income and profits received in connection with the business of any Grantor or the Collateral;

(e)     the collection, realization, sale or other dealing with any Accounts.

Section 12 of Exhibits B, C, and D.

84.     The Obligors may claim some interest or interests in the Collateral, but any such interest or interests are junior, inferior, and subordinate to NELI's security interest therein.

**Claim Nine – Court Appointment of a Receiver**
(Against Premier, Forever Brands, Cheeburger, and Cheeburger VA)

85.     NELI realleges and incorporates herein paragraphs 1 through 84 above.

86.     By the Guaranty and Security Agreements, Premier and each defendant LLC agreed in writing that, following a default under the Loan Agreement, NELI is entitled to appoint a receiver with broad powers to take over, manage and/or sell the Collateral.  Sections 12(f) and (g) and 13 of Exhibits B, C, and D.

87.    These agreements also provide that, following a default, NELI may commence "proceedings in any court of competent jurisdiction for the appointment of a receiver or a receiver and manager or for the sale of the Collateral."  Section 12(h) of Exhibits B, C, and D.

88.    The Guaranty and Security Agreements also give NELI, following a default, the right to appoint the receiver, who "may be any person or persons," and to "remove any Receiver so appointed and appoint another or others instead."  Section 13 of Exhibits B, C, and D.

89.     The Guaranty and Security Agreements state that a receiver "shall have" broad powers, including the following:

    (a)    to enter upon, use and occupy all premises owned or occupied by each Grantor;

    (b)    to take possession of the Collateral;

    (c)    to carry on the business of each Grantor;

    (d)    to borrow money required for the maintenance, preservation or protection of the Collateral or for the carrying on of the business of each Grantor, and in the discretion of such Receiver, to charge and grant further security interests in the Collateral in priority to the Security Interest, as security for the money so borrowed;

    (e)    to sell, lease or otherwise dispose of the Collateral or any part thereof on such terms and conditions and in such manner as the Receiver shall determine in its discretion;

    (f)    to demand, commence, continue or defend any judicial or administrative proceedings for the purpose of protecting, seizing, collecting, realizing or obtaining possession or payment of the Collateral, and to give valid and effectual receipts and discharges therefor and to compromise or give time for the payment or performance of all or any part of the Accounts or any other obligation of any third party to each Grantor; and

    (g)    to exercise any rights or remedies which could have been exercised by the Lender against any Grantor or the Collateral.

Section 13 of Exhibits B, C, and D.

90.     By signing and entering into the Guaranty and Security Agreements, Premier, Forever Brands, Cheeburger, and Cheeburger VA each has agreed that NELI now has the immediate right to the appointment of a receiver.

91.     By the above allegations, NELI has demonstrated a likelihood of success on the merits of its claim that defendants have defaulted on their obligations under the Loan Documents and, therefore, NELI is entitled to an order appointing a receiver.

92.     By reason of defendants' defaults under the Loan Documents, the deterioration of the Obligors' business and assets, their obvious inability to pay amounts due under the Loan Documents, instances of mismanagement and self-dealing, and the health issues affecting Wedo, all as alleged above, there is an imminent danger that the security interests created and perfected by the Loan Documents will be concealed, lost or diminished in value.

93.     Absent an order appointing a receiver having the powers set forth in the Guaranty and Security Agreements (quoted in paragraph 89 above) and under applicable law, NELI will be irreparably harmed by, among other things, a reduction or elimination of value of the Collateral in which it has a security interest and that is the main if not the only source of recovery of at least some of the amounts due to it under the Loan Agreement.

94.     Such harm to NELI would far outweigh any injury to defendants.

**WHEREFORE,** NELI respectfully requests that the Court enter judgment as follows:

(a)     On Claim One, against Premier, for damages in an amount equal to all sums due under the Loan Agreement, including accrued interest at the contract rates through the date of judgment, attorneys' fees, and costs;

(b)     On Claim Two, against Forever Brands, for damages equal to those on Claim One;

(c)    On Claim Three, against Cheeburger, for damages equal to those on Claim One;

(d)    On Claim Four, against Cheeburger VA, for damages equal to those on Claim One;

(e)    On each of Claims Five, Six and Seven, against Wedo, for all amounts received by Wedo, by other persons he designated, or by other officers, employees or members of each defendant LLC, in violation of the Wedo Guaranty and Pledge, the Assignment and Postponement, and the Validity Guaranty;

(h)    On Claim Eight, declaring that NELI has the right to foreclose on the Collateral, and authorizing NELI to do so, in the manner provided in each Guaranty and Security Agreement, as quoted in paragraph 83 above;

(i)    On Claim Nine, appointing a receiver with respect to the Collateral, having the powers stated in the Guaranty and Security Agreements and such other powers as appropriate and necessary for the receiver to perform his or her services and duties;

(j)    Awarding NELI its reasonable attorneys' fees and costs in connection with this action and its efforts to collect the amounts due to it under the Loan Documents; and

(k)    Such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         March 31, 2023

                                        **AKERMAN LLP**

                                        *s/ Mark S. Lichtenstein*
                                        _____
                                        Mark S. Lichtenstein
                                        mark.lichtenstein@akerman.com
                                        Angad Singh Bhai
                                        angad.bhai@akerman.com
                                        1251 Avenue of the Americas, 37th Floor
                                        New York, NY 10020
                                        Tel. (212) 880-3800

                                        *Attorneys for Plaintiff,*
                                        *NELI International Incorporated*