USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 5/12/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**NELI INTERNATIONAL INCORPORATED,**

        Plaintiff,

-against-

**PREMIER RESTAURANT GROUP, LLC,
ET AL.,**

        Defendants.

---

23-cv-02725 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, United States District Judge:**

    Pending before the Court is Plaintiff NELI International Incorporated's ("NELI" or "Plaintiff") motion for a temporary receiver. ECF No. 8. On March 31, 2023, the Court initially denied Plaintiff's emergency motion and request for a temporary restraining order ("TRO") against the Defendants Premier Restaurant Group, LLC ("Premier"), Forever Brands Operating Company, LLC ("Forever Brands"), Cheeburger Operating Company, LLC ("Cheeburger"), and Cheeburger VA, LLC ("Cheeburger VA"), (collectively the "company Defendants") and Anthony Wedo ("Wedo"). ECF No. 18. On April 13, 2023, the Court held a hearing to address Plaintiff's motion. On May 5, 2023, the Court held a subsequent telephonic conference to further address Plaintiff's motion.

**BACKGROUND**

    **I.**    **Factual Background**

    Plaintiff is a Canadian corporation incorporated and with a principal place of business in Ontario, Canada, and is in the business of providing loans and other forms of financing to other businesses. Compl. ¶¶ 4-5. Each of the company defendants—Premier, Forever Brands, Cheeburger, and Cheeburger VA—is a Delaware limited liability company, and the individual

defendant, Wedo, resides in and is a citizen of the State of Delaware. *Id*. ¶¶ 6-7. Mr. Wedo not only founded Premier but also serves as chairman and chief executive officer, as well as the owner of a 95.5% equity interest in Premier. ECF 11 ¶ 4. Premier owns and operates two main restaurant brands, "Forever Yogurt"; "Cheeburger-Cheeburger." Forever Yogurt is operated by Defendant Forever Brands and Cheeburger-Cheeburger is operated by Defendants Cheeburger, and Cheeburger VA. *Id*. ¶ 5. Premier owns and controls these three operating companies. *Id*. Premier is the "sole member" of the other company defendants. *Id*. ¶ 10. In July 2017, Plaintiff provided a $5 million senior secured term loan (the "Loan") to Defendant Premier. *See* Ex. A to Compl., ECF No. 1-1. The purpose of the loan was to finance Premier's business as a franchisor of fast-food restaurant chains. Compl. ¶ 1.

As part of the security for the Loan, each company defendant signed a Guaranty and Security Agreement by which it granted NELI a security interest in all of its assets and the three operating companies guaranteed all of Premier's obligations under the Loan. *See* Compl. ¶¶ 14-17; Exs. B, C, D to Compl., ECF Nos. 1-2, 1-3, 1-4. Under the Guaranty and Security Agreement signed by each of Forever Brands, Cheeburger, and Cheeburger VA, which Premier also signed as a grantor of the security interest, the company defendants all agreed that, if Premier defaulted under the Loan, NELI would be entitled to the appointment of a receiver to assume control over the companies' assets and business (the "Collateral"). Mot., ECF No. 8 at 2; *see also* Ex. B to Compl. ¶ 12; Ex. C to Compl. ¶ 12; Ex. D to Compl. ¶ 12.

Plaintiff explains that between 2017 and 2022, the parties entered into various other agreements related to the Loan. Mot. at 3; Compl. ¶¶ 18-28; Exs. E – J to Compl; Roter Decl., ECF No. 11 ¶ 10. By these agreements, in essence, Plaintiff extended the maturity date of the Loan Agreement or granted Defendants other accommodations, and Mr. Wedo provided certain limited

guaranties and other promises to Plaintiff. Compl. ¶¶ 18-28; Exs E – J to Compl.; Roter Decl. ¶ 10. In the last of these agreements, a Loan Extension Agreement and a Side Letter, both dated March 12, 2022, Plaintiff agreed to accept a reduced sum in full payment of the then outstanding loan balance, but only if NELI received the payment on or before July 31, 2022. Ex. I and J to Compl., ECF Nos. 1-9, 1-10. At that time, the outstanding amount was more than $4 million; and NELI agreed to accept $1.8 million if it received the funds by July 31, 2022. Compl. ¶¶ 27-28. Defendants did not make the payment. *Id*. ¶ 31. The entire amount outstanding under the Loan became due on August 1, 2022, and Defendants have failed since then to pay off the Loan and remain in default. Roter Decl. ¶ 13. NELI demanded such payment by letter dated January 4, 2023. Compl. ¶ 34 and Ex. L to Compl, ECF No. 1-12. By that time, the amount outstanding had risen to more than $4.5 million. *Id*.

Plaintiff explains that on March 30, 2023, Defendants' counsel, Mr. Samuel Frabizzio, informed Plaintiff's counsel that, in large part due to health issues, Mr. Wedo is unable to manage the companies and the companies are unable to pay the more than $4.5 million (plus interest and costs) they owe to Plaintiff. Mot. at 1. They allege that Defendants' counsel "therefore proposed that the company defendants transfer all of their operations to NELI and stated that defendants would 'cooperate to the fullest extent possible' with such transfer." Mot. at 1. Plaintiff explained to the Court that Defendants' counsel communicated with Plaintiff's counsel that Defendants "would continue to provide necessary assistance to effect a Transfer of all Operations to Lender based on present 'as is' status." Ex. A to Lichtenstein Reply Decl., ECF No. 25-1. In its motion, Plaintiff represented to the Court that Defendants will likely not oppose their TRO motion and motion to appoint a temporary receiver.

## II.     Procedural Background

On March 31, 2023, Plaintiff commenced this lawsuit, alleging Defendants violated the various agreements attached to the Complaint and seeking court appointment of a receiver. Plaintiff also seeks the right to foreclose on the Collateral at issue here. *See generally* Compl. Plaintiff also filed an emergency motion to appoint a temporary receiver to oversee the company defendants. ECF No. 8. The emergency motion was denied, and the Plaintiff was directed to serve the complaint, motion papers, and the order denying the TRO on Defendants by Monday April 3, 2023. ECF No. 18. Defendants were also ordered to respond to the Plaintiff's motion on or by April 6, 2023, and the Court scheduled a hearing for April 13, 2023. *Id*. Plaintiff served the papers on Defendant. *See* ECF Nos. 20-24.

On April 13, 2023, the Court held a hearing on the application for the appointment of a receiver in which only Plaintiff appeared. At the end of the hearing, the Court directed Plaintiff to file a letter by April 18, 2023 advising the Court as to whether Mr. Samuel Frabizzio is willing to appear before this Court. ECF No. 26. The Plaintiff was also ordered to supplement the record by submitting materials disaggregating the financial records for each of the defendant companies and franchise units, if possible, on or by April 18, 2023. *Id*. On April 18, 2023, Plaintiff's counsel filed a declaration. *See* Suppl. Decl. of Mark S. Lichtenstein ("Suppl. Decl."), ECF No. 27.

Plaintiff's counsel explained that about one hour after the April 13th hearing concluded, he sent an email to Defendants' lawyer, Mr. Frabizzio, in which he conveyed the questions that the Court posed to him at the hearing. *Id*. According to Plaintiff, Mr. Frabizzio has indicated he will not appear before this Court and will not provide a declaration. *Id*. ¶ 2. Additionally, Plaintiff explains that he asked the following questions to Mr. Frabizzio: "does Ms. Wedo [Defendant's wife] consent to (or not oppose) the Court appointing a receiver for the defendant LLCs?" and "Is Ms.

Wedo willing to provide a declaration, to be filed with the Court, confirming that she, on behalf of Mr. Wedo and the defendant LLCs, consents to (or does not oppose) the Court appointing a receiver for the defendant LLCs?" In response to those questions, Mr. Frabizzio stated, in an e-mail, "Subject to Lender NOW executing a full and complete Release of any and all Personal Liability of any nature of Mr. Wedo as to all matters related to the Loan, Mrs. Wedo would then not Oppose the Court appointing a Receiver and would be willing to provide a Declaration." *Id.* at 3; Ex. A to Suppl. Decl., ECF No. 27-1.

On April 24, 2023, Plaintiff provided an additional letter, including an exchange of emails on April 21 and 22 between Mr. Frabizzio and Bruce Colvin, a consultant for Defendant Premier and an invoice from the consultant's company, Optimized Professional Solutions, to Defendant Premier. Letter, ECF No. 30. Plaintiff also conveyed in its letter that it recently learned that Mr. Colvin is no longer providing services to Premier, which includes the task of "collecting and analyzing the franchisees' financial performance, on the basis of which the franchisees are invoiced for and pay royalties to their respective franchisors-defendant LLCs." *Id.* at 2. Therefore, Plaintiff argues that the company defendants "may receive no further revenues absent the appointment of a receiver." *Id*. Plaintiff argues in its letter that these exchanges and invoice are further proof that the Defendants do not oppose the receivership and that the emergency motion should be granted.

On May 5, 2023, the Court held a telephonic conference to discuss Plaintiff's specific request that the Court grant a "stay of certain actions" in conjunction with the appointment of a receivership. ECF No. 12-1 at 11.[1]

---

[1] Plaintiff asks the Court to adopt the following language in any eventual order appointing a receiver: "Except by leave of this Court, during the pendency of the receivership ordered herein, defendants and their officers, agents, employees, attorneys, all other persons in active concert or participation with any of them, who received actual notice of this Order, and ….other person seeking to establish or enforce any claim,

5

To date, Defendants have not appeared or responded to Plaintiff's motion. Plaintiff's motion is deemed unopposed. Based on the documents entered by Plaintiff and the testimony from the hearing, the Court determines that Plaintiff's motion for a receiver should be **GRANTED.**

## LEGAL STANDARD

Whether a federal court should appoint a receiver in a diversity action is governed by federal law. *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). A federal court has the power in equity to appoint a receiver in order to protect a party's interest in the property. *Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, No. 20-CV-5309 (JGK), 2020 WL 5802365, at *1 (S.D.N.Y. Sept. 28, 2020) (citing Fed. R. Civ. P. 66). "The appointment of a receiver is considered to be an extraordinary remedy [that] should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Citibank, N.A. v. Nyland (CF8), Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988). "As a general matter, when a receiver is sought pursuant to Rule 66 in a diversity case, the appointment of a receiver in equity is not a substantive right but is a remedy that is ancillary to the primary relief prayed for in the suit." *United States Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 254 (S.D.N.Y. 2012)

---

right, or interest against or on behalf of defendants . . . are enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Collateral or the Defendant LLCs, including: (a) filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 et seq., or of any similar insolvency proceeding against or on behalf of the Defendant LLCs; (b) commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Defendant LLCs, including the issuance or employment of process against the Defendant LLCs, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or (c) filing or enforcing any lien on the Collateral or any other asset of the Defendant LLCs, taking or attempting to take possession, custody, or control of the Collateral or any other asset of the Defendant LLCs; or attempting to foreclose, forfeit, alter, or terminate any interest in the Collateral or any other asset of the Defendant LLCs, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise . . . this Order does not stay: (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." ECF No. 12-1 at 11.

(internal citations omitted). "[W]hile a Court with subject matter jurisdiction may have the authority to appoint a receiver, such an appointment may be an abuse of discretion where no other relief is sought." *Id.*[2]

The factors relevant to establishing the need for a receivership are: "[f]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." *Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d at 250 (internal citations omitted). "[T]he existence of any imminent danger of the diminution of the value of the propert[y] . . . is a critical factor in the analysis of whether to appoint a receiver." *Id*. Fraudulent conduct, on the other hand, is not a prerequisite. *See D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008) (appointing a receiver without any evidence of fraud); *United States v. Trusty Capital, Inc.*, No. 06-CV-8170 (KMK), 2007 WL 44015, at *8 (S.D.N.Y. Jan. 5, 2007) (same). Additionally, a provision in a loan agreement that the plaintiff may apply for the appointment of a receiver in the event of default "strongly supports the appointment of a receiver." *Citibank*, 839 F.2d at 97.

## DISCUSSION

During the hearing, the Court explained to the Plaintiff that the Court has a duty to ensure it has enough information to determine whether Plaintiff meets the imminent danger factor and whether Plaintiff will suffer irreparable injury absent the appointment of a receiver, especially

---

[2] At the April 13, 2023 hearing, Plaintiff's counsel confirmed that the ultimate relief sought is "a foreclosure down the road" and that the receivership would not grant all the relief sought in this matter. Tr. at 22-23.

considering Defendants have not appeared in these proceedings. *See* April 13, 2023 Hearing Transcript ("Tr.") at 7, ECF No. 28.

The Court finds the motion to be unopposed at this juncture. At first, Plaintiff conveyed that Defendants did not oppose this motion because of an email from Mr. Frabizzio. Mot. at 1. The Court questioned Plaintiff to ensure Mr. Frabizzio was currently Defendants' counsel and, as explained previously, directed Plaintiff to ask Mr. Frabizzio if he would appear before this Court telephonically. *See* Tr. at 9 ("I guess my question is, does Mr. Frabizzio currently represent the defendant?" and "do you have any information then as to, if Mr. Frabizzio represents the defendants, and if he's willing to consent to all of this, then why doesn't he appear in this action? Why doesn't he appear to tell us that if that's the case?); Tr. at 10 ("Here's what I'd like plaintiff's counsel to do—first, regarding Mr. Frabizzio, I think it makes sense for plaintiff's counsel to reach out to Mr. Frabizzio and find out if Mr. Frabizzio is willing to submit something to the Court, apply for *pro hac vice* admission, and perhaps appear by telephone at some later proceeding."). Plaintiff has submitted copies of email exchanges demonstrating Mr. Frabizzio does not oppose the motion,[3] and that he does not wish to appear before this Court.[4] Plaintiff also submitted two emails whereby Mr. Frabizzio seems to indicate he will only file a declaration stating Defendants'

---

[3] *See* Ex. 1 to Lichtenstein Reply Decl, ECF No. 25-1 (email to Plaintiff's counsel where Mr. Frabizzio states "From this point forward, on behalf of PRG, as Borrower, and Guarantors, it is proposed that we would continue to provide necessary assistance to effect a Transfer of all Operations to Lender based on present "as is" status"); Ex. B to Letter, ECF No. 30-1 (email from Mr. Frabizzio to a consultant explaining that "Over the last 2 weeks, the Attorney for Lender has been trying to have a Judge in the Federal Court for the Southern District of New York issue an Order to allow Lender to place a Court Appointed Receiver in charge of an to take over all operations of PRG. The last submission to the Court was this past Monday and it is expected that the Order will be issued at any time. As a result of the filing in the Court, Tony and Carrie had to relinquish all rights of operation and control. Once the Court Order is in place, all operations will be turned over to the Receiver. Unfortunate, Carrie and Tony have no further involvement/ability to engage in any business operations of PRG.").

[4] *See* Ex. A. to Suppl. Decl., ECF No. 27-1 (email where Mr. Frabizzio answers "no" to Plaintiff's question if he would be willing to appear before this Court.).

consent to this motion if the Plaintiff provides a release of liability as to all claims against the Defendants. *See* Suppl. Decl. at 3; Exhibit 2 to Lichtenstein Reply Decl., ECF No. 25-2 at 1. Although it appears Defendants' purported counsel[5] does not actually, in absolute terms, consent to this motion, he has to date refused to appear before this Court and convey his clients' position. Defendants have not appeared and have not filed an opposition. Accordingly, Plaintiff's motion is unopposed. However, this is not a dispositive factor. Suppl. Decl. ¶ 9. If anything, Defendants non-appearance still requires this Court to ensure its decision rests on a robust record. *See* Tr. at 6.

The Court finds that Plaintiff has shown entitlement to the appointment of a temporary receiver. First, Plaintiff has demonstrated that the Defendants are in default under the Loan and the Guaranty and Security Agreements. *See* Roter Decl. ¶ 13; Compl ¶ 34; Ex. L to Compl, ECF No. 1-12. This default is a "strong basis for an appointment of a receiver because [it] show[s] a high likelihood of success on the merits." *Wilmington Tr., Nat'l Ass'n*, 2020 WL 5802365, at *1.

Second, as to the imminent danger factor, Plaintiff points to the "deterioration" of the value and assets of the businesses that serve as Collateral for the Loan. Compl. ¶¶ 38-51; Roter Decl. ¶ 15l; Stidham Decl., ECF No. 10 ¶¶ 6-9. In its complaint, Plaintiff included a chart indicating the company defendants' total income from the past four years. *See* Compl. ¶ 39.[6] In its supplemental declaration, Plaintiff included disaggregated figures so the Court could better discern if every company defendant was "deteriorating." Suppl. Decl. ¶¶ 17-18. NELI asserts that it does not have financial results for individual franchise units, which are independently owned, and not owned by

---

[5] Although the Court acknowledges it cannot independently confirm that Mr. Frabizzio is Defendants' counsel, the Court will rely on Plaintiff counsel's testimony and the exhibits filed demonstrating Mr. Frabizzio's communications.

[6] The tax returns of Premier for 2019, 2020, and 2021 and its unaudited financial statements for 2022, which are in NELI's possession, are the source for the consolidated revenue figures shown in paragraph 39 of the Complaint.

the defendants. *Id*. ¶ 18. Plaintiff further explained that since 2019, the number of franchise units has dwindled from 40 to 15. *Id*. ¶ 22; Stidham Decl. ¶ 7. Additionally, Plaintiff argues that because the Defendants are 99.5% owned and managed by Defendant Wedo who has been "incapable (for health reasons) of managing the business," the businesses are at risk of further deteriorating. *Id*. ¶ 22; *see also* Tr. at 29-32.

Finally, in its letter dated April 24, 2023, Plaintiff points to two critical additional issues. First, Plaintiff has conveyed that it recently learned that Mr. Colvin, a former consultant, is no longer providing services to Premier, which includes the task of "collecting and analyzing the franchisees' financial performance, on the basis of which the franchisees are invoiced for and pay royalties to their respective franchisors-defendant LLCs." ECF No. 30 at 2. This implies the company defendants may not have the mechanism to collect royalty fees from the franchisees. Plaintiff explains that "the bulk of the revenue of Premier and its operating companies . . . consists of [] royalties and franchise fees." Suppl. Decl. ¶ 15. Second, Plaintiff explained that one of the franchisees is seeking to sell the franchise and that this must be approved from its franchisor—one of the company defendants. ECF No. 30 at 2. Plaintiff argued that because no one at the company defendants "appears able or willing to perform this essential task", Plaintiff feared this sale would not be approved and therefore the franchisee would "cease operations thereby continuing the deterioration of the business." *Id*. On April 28, Plaintiff filed another letter advising the Court that because "the defendants did not even engage in the consideration of the request by a [] franchisee to transfer its franchise agreement, . . . the proposed purchaser is no longer interested in acquiring the franchise and the franchise unit will close in July 2023." *See* ECF No. 31 at 2.

Ultimately, the Court agrees that the ongoing threats of deterioration of the value and assets of the businesses coupled with Mr. Wedo's alleged inability to manage the business are enough to

show the existence of an imminent danger of the diminution of value of the property and that Plaintiff will suffer irreparable injury to its interests in the property.

As to the fraudulent conduct factor, it is not clear that Plaintiffs have demonstrated such fraud has occurred here. But as explained previously, fraudulent conduct is not a prerequisite to appointing a receiver. *Wilmington Tr., Nat'l Ass'n*, 2020 WL 5802365, at *1.

Finally, the parties' agreements state that, in the event of default, NELI "shall have the following remedies: . . . (f) the appointment by instrument in writing of a receiver or a receiver and manager . . . of the Collateral." *See* Exs. B, C, and D to Compl. This provision strongly supports the appointment of a receiver. *Citibank*, 839 F.2d at 97.

The Court will additionally grant Plaintiff's request for a "stay of certain actions" as detailed in its proposed order, ECF No. 12-1 at 11. *See S.E.C. v. Byers*, 609 F.3d 87, 89, 92 (2d Cir. 2010) ("We hold that while it should be sparsely exercised, district courts possess the authority and discretion to enter anti-litigation orders, including those that bar the filing of involuntary bankruptcy petitions absent the district court's permission" and "[a]n anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership."); *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 552 (6th Cir. 2006) ("Because the court's power of injunction in a receivership proceeding arises from its power over the assets in question, non-parties to the underlying litigation may be bound by a blanket stay, so long as the non-parties have notice of the injunction."); *KeyBank Nat'l Ass'n v. Monolith Solar Assocs. LLC*, No. 1:19-CV-1562, 2020 WL 4340518, at *1 (N.D.N.Y. July 28, 2020) ("at the same time" the Court appointed a receiver under Federal Rule of Civil Procedure 66, "the Court imposed a stay of all outside litigation against the receivership properties absent express permission"); *McIntire v. China MediaExpress Holdings, Inc.,* 113 F. Supp. 3d 769, 772 (S.D.N.Y. 2015) ("The *Barton* Doctrine,

11

developed from common law by the Supreme Court, provides that a suit may not be brought against a receiver without leave of such receiver's appointing court.").

## CONCLUSION

For the reasons stated, Plaintiff's motion is **GRANTED,** and the Court will enter an order appointing a receiver.

**SO ORDERED.**

Dated:   May 12, 2023
         New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**